**Michael DOYLE, Petitioner,**

v.

**Phillip COOMBE, Superintendent and Attorney General of the State of New York, Respondents.**

**No. 82 Civ. 3787(MP).**

United States District Court,
S.D. New York.

Oct. 15, 1982.

Michael Doyle, pro se.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for respondents; Robert M. Pitler and Marc Frazier Scholl, Asst. Dist. Attys., New York City, of counsel.

## MEMORANDUM

MILTON POLLACK, District Judge.

Petitioner Michael Doyle, a state prisoner, seeks a writ of habeas corpus setting aside the judgment of his conviction by a jury in State Supreme Court, New York County, on two counts of assault in the first degree, two counts of assault in the second degree, and riot in the first degree. He was sentenced as a youthful offender to concurrent indeterminate four year terms on all counts. Doyle was also later convicted of offenses with which he was charged in Supreme Court, Bronx County, for which he received a sentence to run consecutive to the New York County judgment.

*Prior Proceedings*

Doyle's conviction in New York County arose out of an attack of black people by a mob of more than fifty youths in Washington Square Park on September 8, 1976. Doyle moved in state court prior to trial to suppress identification testimony on the ground that the identification procedures used were unduly suggestive. The motion was denied. The name of the witness who made the identification was not disclosed to the petitioner at that time.

Following his conviction on March 15, 1978 Doyle appealed to the New York Supreme Court, Appellate Division, First Department. The appellate court remanded the case with instructions to reopen the suppression hearing on the ground that the trial judge should have reopened this hearing when the name of the identifying witness was revealed at trial. At this new hearing, the trial judge found that the identification procedure did not create a very substantial likelihood of misidentification.

Doyle again appealed. This time the Appellate Division affirmed the conviction by a divided court, one judge dissenting and stating that the evidence against Doyle was insufficient for conviction. Leave to appeal to the New York Court of Appeals was denied.

*The Grounds Asserted*

Three grounds are asserted for issuance of the writ:

(1) That the evidence presented at the trial was insufficient as a matter of law to establish his guilt beyond a reasonable doubt;

(2) That the procedures used at the lineup at which he was identified were violative of his Sixth Amendment right to counsel;

(3) That a photo identification procedure undertaken prior to the line-up was impermissibly suggestive and was violative of the Fourth Amendment because photographs were taken during a period of illegal detention.

None of the grounds for issuance of a writ of habeas corpus is valid.

## 1. Sufficiency of the Evidence

The standard to be applied by a federal court on a habeas corpus review was recently set forth by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979):

> The applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

Thus, the scope of review on habeas corpus is limited. The Court does not attempt to determine guilt but instead needs only to see if a rational fact finder could have found guilt beyond a reasonable doubt.

At trial, only one witness identified Doyle as having been present at the attack, although another witness testified that he saw Doyle at the place where the mob had formed to organize the attack. The main witness was Charles Febee, an eye-witness and a victim of the attack, who lost the sight of his right eye as a result of injuries sustained in the attack.

Febee testified that he observed Doyle as one member of a group of attackers running towards him. He testified that he had come face to face with Doyle, if only for a short moment. Petitioner claims that drugs and alcohol had affected the witness' senses and made the identification unreliable, especially because of the short time for observation. Febee had admitted to having smoked marijuana earlier in the day and to having shared some beer and wine with a friend.

The evidence established countervailing factors to be considered in evaluating the witness' ability and opportunity to establish the petitioner's guilt. Febee testified that

he had been playing frisbee in the park during the evening and that the effects of the alcohol and the drugs had worn off. Also, he testified that he had been trained by the military to spot AWOL soldiers on the basis of their photographs and that he had concentrated upon Doyle's features during the brief period of observation in order to be able to identify him later.

■ Thus, enough evidence was adduced to enable a rational trier of fact to find Doyle guilty beyond a reasonable doubt.

Even if the testimony of Febee alone were called upon to support the implication of Doyle, this presents no problem as a matter of law. In *United States v. Danzey,* 594 F.2d 905, 916 (2d Cir. 1979), Judge Oakes noted that "the testimony of a single uncorroborated eyewitness is generally sufficient to support a conviction."

## 2. The Line-Up Procedure

Petitioner contends that the line-up procedure used by the State violated his Sixth Amendment right to counsel. Essentially, petitioner claims that the procedure used was defective in that a curtain separated the viewing witness and the petitioner's counsel. The attorney was thus unable to observe the witness at the moment of identification and was unable to observe actions or necessarily hear any comments the prosecution personnel who were on the witness' side of the curtain might make.

■ This same claim was rejected by Judge Sofaer in a challenge of this line-up procedure made by a co-defendant in this case. *Andriani v. Coughlin,* 80 Civ. 2332 (S.D.N.Y., February 5, 1981). There are no meaningful distinctions between the *Andriani* case and this one and the reasoning in the *Andriani* case clearly strikes down Doyle's similar claim.

The right of an individual to have counsel present at a line-up was established in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The purpose of this requirement is to assure that the defense would be able to reconstruct the line-up at trial. The defense counsel's pres-

ence would assure that an accurate reconstruction of the line-up could be made at trial.

Nonetheless, the logic of *Wade, supra,* has not been extended to all aspects of all identification procedures. In *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the Court held that counsel need not be present at a photographic display as the display could be reconstructed at trial. *Id.* at 316, 93 S.Ct. at 2577. As this holding suggests, the actual moment of the identification of the defendant from a line-up or a photo display is not a critical stage in the prosecution process that entitles the defendant to the presence of counsel. The Second Circuit has explicitly so held in *United States v. Tolliver,* 569 F.2d 724, 728 (2d Cir. 1978). Thus, all that is constitutionally required is that counsel be able to observe the line-up. As the Second Circuit stated in *Tolliver, supra,* at 728.

> We now join our sister circuits in holding that the actual identification from a *line-up* (as well as a photographic spread), if made outside the presence of the defendant, is constitutionally valid, since the actual confrontation is the only "critical stage" requiring the presence of counsel. [Cits. omitted.]

*Tolliver, supra,* at 728, suggested that in federal proceedings, a recording should be made of the identification process. Yet, this suggestion does not affect the constitutionality of the line-up procedure used in this case. First, this was a prosecution by the state and not by the federal authorities. Next, the Second Circuit explicitly indicated that *Tolliver, supra,* was not to have retroactive effect. *Id.* at 728, n.4. The line-up at which Doyle was identified occurred before the decision in *Tolliver, supra.*

Doyle argues that his situation is distinguishable from that in *Andriani, supra.* He first claims that his counsel was unable to reconstruct the identification process. This assertion must fail. Doyle's counsel was given an opportunity at the re-opened hearing to cross-examine Febee, the prosecutor, and the police officers involved. Given the constitutionally permissible absence of the attorney from the identification stage, this opportunity to cross-examine is all that can ever be hoped for. This ground thus does not support a meaningful distinction from *Andriani, supra.*

Doyle also claims that his situation is distinguishable from *Andriani, supra,* as there was no evidence in addition to the testimony of Febee to convict him. This claim has no merit. The holding that the identification phase is not a critical stage of the prosecution process has nothing to do with the adequacy of the other evidence in the case. In addition, there was testimony by a witness that Doyle was seen in the area where the riot was being planned.

### 3. The Photographic Identification Procedure

Doyle asserts that the display of an array of photographs to Febee was constitutionally invalid for two reasons. First, he claims that the array was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, in violation of the test set forth in *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) and as interpreted by *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *Manson v. Brathwaithe,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Second, he claims that the photographs of him used in the array were obtained in the course of an illegal detention of him.

■ A determination after a hearing by a state court on the merits of a factual issue raised by a state prisoner on a habeas application, must be presumed to be correct unless one of the exceptions set forth in 28 U.S.C. § 2254(d) is established. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ In order to evaluate the likelihood of misidentification, the totality of the circumstances must be examined. *Manson v. Brathwaithe,* 432 U.S. at 113, 97 S.Ct. at 2252. These include the opportunity of the witness to view the criminal at the time of

the offense, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the identification, and the time between the crime and the identification. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

■ The state court after a hearing on the merits of this factual issue specifically concluded on the facts that the photographic array was not so impermissibly misleading as to violate the constitutional standard set forth above. The trial judge found that Febee was a trained observer and therefore likely to remember the assailant vividly. He was also influenced by Febee's giving of an accurate description of the assailant the night of the incident. In addition it appears that Febee testified that he focused on the assailant's features and that there was no substantial delay between the incident and the identification procedure.

Doyle asserts that the photographic array was impermissibly suggestive as the other individuals in the array were not sufficiently similar to Doyle in appearance and as markings appeared on the photographs that might encourage the selection of Doyle. The record supports a finding that the markings were not present when Febee viewed the photographs. Also, Febee testified that he was not aware of the markings when he viewed the photographs, even if they were present. Thus, a finding that the markings did not make the array misleading is supportable. Also, as many of the other individuals whose pictures used in the array are youths, this supports a finding that the array was not itself misleading. Given the test in *Manson, supra,* that allows for some suggestiveness given overall reliability, the state court record supports the finding that the array was not improper.

Thus, none of the grounds set forth in § 2254(d)(1)–(7) apply and as the record fairly supports the conclusion that the identification was not constitutionally defective, this Court may not set aside that finding.

In any event, even if the record could be found to be impermissibly suggestive, the trial court found that the ability of Febee to identify Doyle at the line-up had an independent basis in his observation of Doyle at the time of the attack. Such an independent basis is constitutionally adequate to cure an impermissible identification procedure. *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), *Alejandro v. Scully,* 529 F.Supp. 650 (S.D.N.Y.1982). As the record supports this conclusion, especially in light of Febee's training as an observer, it is binding on this Court. *Sumner, supra.*

■ Regarding the second aspect of Doyle's claim, that the photographs were the product of an illegal detention, the parties dispute whether the question of the illegal detention and the use of the fruits of this detention were adequately raised in the state court, or whether *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) bars the consideration by a federal court of that argument. Assuming that these claims were adequately raised and that the detention at which the photographs of Doyle were taken was illegal, this claim must nonetheless fail. As noted above, the finding of the trial court that the line-up identification was not tainted by the display of the photographs to Febee must be accepted by this Court as it has full support in the record.

*Conclusion*

As all of the petitioner's claims are without merit in law or fact, the petition for a writ of habeas corpus must be denied in all respects.

SO ORDERED.