**Nathan SAMS, Petitioner–Appellant,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility, Respondent–Appellee.**

**No. 774, Docket 93–2165.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1994.

Decided March 7, 1994.

■■■■■■■■■■■■■■■■

Susan Bloch Marhoffer, New York, NY, for Petitioner–Appellant.

Robert M. Raciti, Ass't District Attorney, New York, NY (Robert M. Morgenthau, District Attorney, New York County, Marc Frazier Scholl, Ass't District Attorney, New York, NY, of counsel), for Respondent–Appellee.

Before: PRATT, MINER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Petitioner Nathan Sams, a New York State prisoner, appeals from an order of the United States District Court of the Southern District of New York, Shirley Wohl Kram, *Judge,* denying his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). The district court, adopting the recommendation of Theodore H. Katz, *Magistrate Judge,* rejected petitioner's constitutional challenges to certain identification testimony adduced at trial and to a supplemental jury instruction on felony murder.

We affirm.

## BACKGROUND

In 1980, Sams was convicted in a New York state court of second-degree murder and two counts of first-degree robbery. N.Y.Penal Law §§ 125.25(3), 160.15(2) (McKinney Supp.1994). The events leading to his conviction were described at his trial as follows.

In the early morning hours of January 26, 1979, Sams and three companions entered Harry Albergettie's Manhattan apartment, interrupting a card game at which Nora Govan was present. Sams shot Albergettie to death, and robbed two of the card players, Stanley Diggs and John Lee Harvey.

Four months later, Sams was arrested on an unrelated charge. That same day, Diggs picked Sams out of a lineup, stating that Sams "resembled" his assailant. Three days later, Govan, who knew Sams from her neighborhood, viewed a photo array and after she selected Sams's photograph, a lineup was arranged. Just before the lineup, Govan grew jumpy and refused to give her name to petitioner's counsel. Counsel observed the lineup and watched Govan as she viewed it.

When asked if she knew anyone in the lineup, Govan started to tremble and did not respond. At that point, a paralegal from the district attorney's office escorted Govan to the office of an assistant district attorney, who arrived 15 to 20 minutes later. During this interval, no one spoke with Govan regarding the case. The assistant district attorney immediately asked Govan, in the presence of the paralegal, whether she had recognized anyone in the lineup, and she then identified Sams. Sams's attorney was not present for this.

### A. The State Court Proceedings

Sams was charged with two counts of second-degree murder: intentional homicide and felony murder. He was also charged with two counts of first-degree robbery. Sams moved to suppress the identification testimony on the ground that the photo array identification and the subsequent lineup were constitutionally improper. The trial court held a hearing and then denied petitioner's motion to suppress.

At trial, Govan again identified Sams, adding that she had also identified him in a pretrial lineup. Consistent with his earlier lineup identification, Diggs testified that he could not positively identify Sams as the gunman, but believed that he "resembled" him.

In its charge to the jury, the trial court explained that under New York's felony murder rule, "[a] person is guilty of murder in the second degree when ... he commits or attempts to commit robbery in the first degree, and in the course of, and in furtherance of, such crime, or immediate flight therefrom, he causes the death of a person other than one of the participants."

During deliberations, the jury sent out a note which read: "Can we have the law on counts one and two read and explained to us

again, please. Are counts one and three automatically connected?" In response, the trial judge reread his felony murder instruction. Addressing the jury's concern about the linkage between counts one and three, he answered:

> As to the connection, if any, between counts one and three.
>
> Count one is what we call felony murder.
>
> In this case the felony charged in the count is robbery in the first degree.
>
> As I explained to you, the crime of robbery in the first degree must be proved beyond a reasonable doubt as to each element in order to support the felony murder conviction.
>
> As a practical matter, two robberies are alleged in this indictment. Count three alleges a robbery of Stanley Diggs, and count four alleges a robbery of John Lee Harvey.
>
> So for all practical purposes, count one is connected with either count three or count four.

Defense counsel objected to this instruction, requesting that the jury be told that it could find the petitioner guilty of counts three or four (robbery counts) without automatically finding him guilty of count one (felony murder count). The judge denied this request.

The jury convicted Sams of felony murder and of both first-degree robbery counts. The trial court exercised its discretion to dismiss the robbery counts in light of the more serious murder conviction, and sentenced Sams to an indeterminate prison term of 15 years to life.

On direct appeal to the Appellate Division, First Department, Sams claimed that Govan's in-court identification should have been suppressed and that the prosecutor's summation contained improper comments. In a *pro se* supplemental brief, Sams also claimed that the evidence was insufficient to prove his guilt; that the government failed to "properly preserve and accurately reconstruct" the photo array shown to witnesses; that Govan's in-court identification should have been suppressed; and that the identification charge was insufficient.

The First Department unanimously affirmed petitioner's conviction without opinion. *People v. Sams*, 99 A.D.2d 1032, 472 N.Y.S.2d 794 (1st Dep't 1984). The Court of Appeals denied leave to appeal, *People v. Sams*, 63 N.Y.2d 680, 479 N.Y.S.2d 1054, 468 N.E.2d 716 (1984), and, on reconsideration, again denied leave. *People v. Sams*, 64 N.Y.2d 763, 485 N.Y.S.2d 1050, 475 N.E.2d 467 (1984).

## B. *The Habeas Corpus Proceeding*

Seven years later, in June 1991, Sams petitioned the district court for a writ of habeas corpus. His principal contention was that the use of Govan's post-lineup identification—made outside the presence of his attorney—deprived him of "the effective assistance of counsel and due process of law." Sams further contended that the trial court's supplemental instruction on felony murder was erroneous.

The petition was referred to a federal magistrate judge, who recommended denying the petition and dismissing the action. Regarding Govan's lineup identification, the magistrate judge specifically found that Govan was asked to make an identification in defense counsel's presence, but "on her own" chose not to do so until counsel was out the room. He also found that prior to the suppression hearing defense counsel was informed of Govan's identity and, therefore, had ample opportunity to interview her before the hearing.

Relying on *United States v. Tolliver*, 569 F.2d 724 (2d Cir.1978) (actual verbal identification after the lineup, if made outside presence of defense counsel, is constitutionally valid), the magistrate judge concluded that Sams was not constitutionally entitled to have his attorney present at the post-lineup interview with Govan. Although *Tolliver* recommended that federal prosecutors should make a record of identification interviews following a lineup, the magistrate judge found that the suggestion was not "constitutionally mandated" or "binding on state prosecutions."

Finally, the magistrate judge found that the felony murder instruction and the subsequent supplemental instruction, when read together, correctly informed the jury of the

essential elements of New York felony murder law.

In an order dated January 25, 1993, the district court accepted the magistrate judge's report, denied the petition, and issued a certificate of probable cause. This appeal followed.

## DISCUSSION

### I. Lineup Identification

■ Sams asks this Court to hold that, as a matter of federal constitutional law, any lineup—state or federal—"is not finished until the witness has declared whether or not an identification of a particular person as the perpetrator of the crime was in the lineup," Petitioner's Brief at 16, and thus defense counsel must be present. Failing that, he requests that we announce a new constitutional rule that, at least, requires the government to record all post-lineup identifications made in the absence of defense counsel. We conclude that both rulings are barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

■ Petitioner can cite no case establishing that, as a matter of federal constitutional law, he had the right to have his attorney observe the oral portion of the witness's post-lineup identification of petitioner. Indeed, the case law is to the contrary. Although the post-indictment lineup is a "critical stage" in a defendant's prosecution, thus entitling the defendant to the presence of counsel, *United States v. Wade*, 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967), "the actual identification from a line-up . . ., if made outside the presence of the defendant, is constitutionally valid, since the actual confrontation is the only 'critical stage' requiring the presence of counsel." *Tolliver*, 569 F.2d at 728 (citing *United States v. Bennett*, 409 F.2d 888, 900 (2d Cir.1969)); *see Doyle v. Coombe*, 549 F.Supp. 354, 356–57 (S.D.N.Y. 1982). *Accord Hallmark v. Cartwright*, 742 F.2d 584, 585 (10th Cir.1984) (per curiam); *United States v. White*, 617 F.2d 1131, 1135 (5th Cir.1980); *United States v. Bierey*, 588 F.2d 620, 624 (8th Cir.1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); *United States v. Parker*, 549 F.2d 1217, 1223 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Wilcox*, 507 F.2d 364, 371 (4th Cir.1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975).

In *Tolliver*, we held that a defendant's right to counsel was satisfied when his attorney was present during a witness's viewing of the lineup even though the subsequent identification procedure was *specifically* designed so that the attorney would not observe the witness making his choice. 569 F.2d at 726. *A fortiori*, the procedure employed here is even less constitutionally suspect. As the magistrate judge found, there was no attempt by the prosecutor to prevent Govan from verbalizing her identification in defense counsel's presence. The prosecutor asked Govan to make the identification, apparently in front of counsel, but she was too afraid to do so. That fear led the court in *Tolliver* to conclude that there are sound policy reasons why federal prosecutors may legitimately choose to delay a witness's verbal identification until after the lineup is concluded. *See Tolliver*, 569 F.2d at 728–30.

■ Nor is Sams entitled to a new trial because the state prosecutor failed to tape record his interview with Govan. *Tolliver* suggested that when a federal prosecutor excludes defense counsel from the actual verbal identification by the lineup witness, the identification ought to be recorded. *See id.* at 728. This suggestion, however, was a supervisory recommendation made to federal prosecutors, and not a constitutional mandate. As a judicially imposed rule applicable only to federal prosecutions, the *Tolliver* taping recommendation does "not affect the constitutionality of the line-up procedure used" in a state criminal case. *Doyle*, 549 F.Supp. at 357.

Sams was in no way prejudiced by the absence of a tape recording of Govan's identification because, unlike Tolliver, he had all the essential information about the identification despite her unplanned refusal to identify Sams in counsel's presence. *See Tolliver*, 569 F.2d at 728. As the magistrate judge correctly found, Sams was fully informed of the details of the identification at the sup-

pression hearing, where he had an opportunity to cross-examine the paralegal who was present at the identification. Thus, Sams was provided with the details of the identification at a time when he could use the information to suppress the identification.

■ Petitioner seeks nothing less than to have us announce a new constitutional rule of criminal procedure in this state prisoner habeas corpus proceeding. Even if we were so inclined, we could not do so. But for two "narrow exceptions" to *Teague, see Saffle v. Parks,* 494 U.S. 484, 486, 110 S.Ct. 1257, 1259, 108 L.Ed.2d 415 (1990), neither of which applies here, new constitutional principles may not be announced in such collateral proceedings. *See Teague,* 489 U.S. at 310, 316, 109 S.Ct. at 1075, 1078 (plurality opinion); *see also Linares v. Senkowski,* 964 F.2d 1295, 1297–98 (2d Cir.) (applying *Teague*), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992).

Accordingly, we conclude that the district court properly rejected Sams's call for the adoption and retroactive application of a new rule requiring counsel's presence at post-lineup interviews. Similarly, we decline to announce a rule mandating the recording of a witness's post-lineup identification in a state prosecution when the identification does not occur in defense counsel's presence.

## II. *Supplemental Jury Instruction*

■ Sams claims a constitutional error in the trial court's supplemental instruction on felony murder. Specifically, he contends that the instruction "constructively precluded a fair evaluation of the evidence by the jury," that it was "misleading and unresponsive," and that it failed to "address the jury's confusion" with the legal connection between felony murder and robbery. Petitioner's Brief at 23. We disagree.

■ "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.

1985); *see Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context. *See United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982).

Here, Sams cannot show that the instruction violated a right guaranteed to him by federal law; indeed, the supplemental instruction was proper in all respects. A review of the charge demonstrates that the trial judge correctly instructed the jury with respect to the felony murder count, and that the error Sams claims is simply not there. The main charge, as well as the supplemental instruction, explained that the prosecution was required to prove beyond a reasonable doubt that Albergettie's death was caused in the course of and in furtherance of the crime of first-degree robbery. Indeed, the court's instructions faithfully tracked the language of New York's pattern criminal jury instructions. *See* 2 CJI (NY) Penal Law § 125.-25(3), at 222–27 (felony murder); 2 CJI (NY) Penal Law § 160.15(2), at 929–34 (first-degree robbery); *see also People v. Dering,* 140 A.D.2d 538, 539, 528 N.Y.S.2d 622, 622–23 (App.Div.) (mem.), *leave denied,* 72 N.Y.2d 956, 534 N.Y.S.2d 670, 531 N.E.2d 302 (1988) (in felony murder case, CJI instructions are the "approved" instructions).

Both in its main charge and in the supplemental instruction, the trial court explained that the first element of the felony murder count was first-degree robbery, and, that in this case, the victim of the robbery could be either Diggs or Harvey—the robbery victims named in counts three and four of the indictment. Moreover, the court accurately and repeatedly instructed the jury that robbery was only the first element of the crime of felony murder.

Next, the court correctly instructed the jury, both in its main charge and supplemental instruction, that the prosecution was also required to prove beyond a reasonable doubt three additional elements: (i) that petitioner caused Albergettie's death; (ii) that Albergettie's death was caused in the course of or in furtherance of the commission of robbery in the first degree; and (iii) that Albergettie

was not a participant in the robbery. The court's instruction thus accurately conveyed the necessary elements under the applicable provisions of New York law. *See* N.Y. Penal Law §§ 125.25(3) (felony murder), 160.15(2) (first-degree robbery).

Here, the jury's question—whether "counts one and three [are] automatically connected"—was merely an effort on the jury's part at understanding the relationship between the robbery element of the felony murder charge and the two separate robbery charges. It appears that the jury simply wanted to know whether a finding of guilt with respect to one of the robbery counts satisfied the first element under the felony murder count. Accordingly, the court's response that "count one is connected with either count three or count four"—the robbery counts—was wholly accurate, since the robbery of either Diggs or Harvey was an essential element of the felony murder charge.

Contrary to petitioner's contention, therefore, the court's answer was responsive to the jury's question and was not "so defective that it caused actual and substantial prejudice" to petitioner. Petitioner's Brief at 24. Rather, it correctly informed the jury that in order to convict petitioner of felony murder it first had to find that petitioner had robbed either Diggs or Harvey—thus, the "connection" between count one and counts three or four. Of course, since the jury gave no indication whatsoever that the court's response to its question was confusing or unhelpful, there is even less reason for crediting Sam's speculative reasoning to the contrary.

In sum, the court's main charge and supplemental instruction on the felony murder count were proper in all respects. Accordingly, petitioner is not entitled to relief on his claim that the jury instruction denied him due process.

## CONCLUSION

The district court's denial of the Section 2254 petition is affirmed.