## Bryant COLEMAN

v.

## Larry MEACHUM, Commissioner of Correction.

### Civ. No. 5:92CV00332 (WWE).

United States District Court,
D. Connecticut.

June 23, 1994.

Bryant Coleman, pro se.

James J. Ruane, Gaston & Ruane, Bridgeport, CT, for plaintiff.

James A. Killen, Mitchell S. Brody, Mary H. Lesser, Crim. Justice, Office of the Chief State Atty., Wallingford, CT, for defendant.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Petitioner, Bryant Coleman, brings this habeas corpus action against respondent, Larry Meachum, pursuant to 28 U.S.C. § 2254. Petitioner challenges a state court judgment of conviction, rendered after a jury trial, of first degree sexual assault in violation of Conn.Gen.Stat. § 53a–70(a), first degree burglary in violation of Conn.Gen.Stat. § 53a–101(a)(1) and first degree robbery in violation of Conn.Gen.Stat. § 53a–134(a)(3). Petitioner and respondent have filed cross-motions for summary judgment. For the following reasons, petitioner's motion will be denied and respondent's motion will be granted.

### I. *FACTS*

The jury reasonably could have found the following facts. The victim lived in an apart-

ment in New Haven, Connecticut. One could gain access to the victim's apartment using either the rear or the front entrance to the building. On May 13, 1984, the victim's doorbell rang. In response, the victim checked both entrances to the building, leaving her apartment door ajar. The victim did not see anyone at either entrance, but noticed a pile of clothing in the hallway and signs that someone had wedged open the building's rear door.

When the victim returned to her apartment, she encountered petitioner who threatened her with a shiny metallic object believed to be a knife. In response to repeated threats of physical harm, the victim handed petitioner thirty-seven dollars. Petitioner then sexually assaulted the victim.[1] Petitioner ordered the victim to gather the clothes that he had left in the hallway, again threatening her with the metallic object. The victim complied and returned with a light-colored jacket. She then escaped from her apartment through a window, shimmying along a ledge to a neighboring apartment. She climbed into her neighbor's apartment, and her neighbor called the police.

During the encounter, the victim made several observations about her assailant. While removing her assailant's sneakers, the victim noticed that her assailant had tied a lace around his left ankle. She noticed that a plastic card and a comb had fallen from her assailant's pant pockets. The victim was also able to observe her assailant's face during the encounter.

When the police arrived at the scene, the victim described her assailant as a black male, nineteen years old, slim, short-haired and wearing a light-colored jacket and pants with frayed cuffs. The victim and a police officer searched for the assailant. In the vicinity of the apartment building, the victim saw petitioner crossing the street and told the officer that petitioner was her assailant. As the police car approached petitioner, he turned away and covered his face with a bouquet of flowers. The victim assured the officer that petitioner was her assailant. At the victim's request, the officer raised petitioner's left pant leg revealing the lacing of

his sneaker around his ankle. Buttressing the victim's identification, the officer found that petitioner possessed a comb, an identification card, a shiny metal bottle opener and thirty dollars. Petitioner was wearing a light-colored jacket and pants with frayed cuffs.

## II. *STATE COURT PROCEEDINGS*

Petitioner was charged with sexual assault, burglary and robbery. The case was tried to a jury. The principal issue at trial was the identification of the victim's assailant. Petitioner testified and presented evidence in support of an alibi defense.

Critical to the present habeas corpus proceeding is the trial court's jury charge. The relevant portions of the charge are those relating to the doctrine of consciousness of guilt, petitioner's right to testify in his own defense and the interplay between these two principles. In addition, the instructions are replete with references to the prosecution's burden of proving petitioner's guilt beyond a reasonable doubt.

The jury found petitioner guilty of sexual assault, burglary and robbery. On direct appeal, the Connecticut Appellate Court affirmed the judgment of conviction. The court first held that the jury instructions did not undermine the presumption of innocence. The court next determined that the instructions impermissibly reduced the prosecution's burden of proof and burdened petitioner's right to testify in his own defense. Notwithstanding the improper instructions, the Appellate Court declined to reverse the judgment of conviction, finding that the instructional error was harmless. *State v. Coleman*, 14 Conn.App. 657, 544 A.2d 194, *cert. denied*, 208 Conn. 815, 546 A.2d 283 (1988). Petitioner now reasserts the constitutional impropriety of the jury instructions as a basis for relief pursuant to 28 U.S.C. § 2254.

## III. *STANDARD OF REVIEW*

A state prisoner may obtain a writ of habeas corpus if his incarceration resulted from a violation of the Constitution or the

---

**1.** The sordid details of the sexual assault are not pertinent to the issues before the court.

laws or treaties of the United States. 28 U.S.C. § 2254; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). The effect of the writ is to discharge a prisoner "from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction." *Preiser v. Rodriguez*, 411 U.S. 475, 485, 93 S.Ct. 1827, 1834, 36 L.Ed.2d 439 (1973). The writ is available to relieve persons "whom society has grievously wronged in light of modern concepts of justice." *Kuhlmann v. Wilson*, 477 U.S. 436, 447, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986) (internal quotations omitted).

In the present case, the question is whether the jury instructions were constitutionally deficient. To establish that the jury charge violated the constitution, petitioner must establish not merely that the challenged instructions misstated state law but also that they violated a right secured to the petitioner by federal law. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985). A reviewing court must analyze the allegedly improper charge in its total context, read as a whole. *Cupp*, 414 U.S. at 146–47, 94 S.Ct. at 400; *Sams v. Walker*, 18 F.3d 167, 171 (2d Cir.1994). Review of an ambiguous instruction entails consideration of " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, ———––——, 112 S.Ct. 475, 481–82, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

## IV. *DISCUSSION*

Petitioner's claims pursuant to § 2254 echo his contentions presented to the Appellate Court. He claims that the trial court's instructions to the jury were constitutionally improper because they (1) undermined the presumption of innocence; (2) reduced the prosecution's burden of proof; and (3) burdened petitioner's right to testify in his own defense. The Court disagrees.

## A. *The Presumption of Innocence*

Petitioner argues that the jury charge undermined the presumption of innocence because it invited the jury to predicate its verdict, not on the evidence, but on speculation as to why the petitioner testified as he did. Petitioner's argument is meritless.

In the course of the jury charge, the trial court explained the doctrine of consciousness of guilt as follows:

If [petitioner] ... should make false statements respecting himself or as to his whereabouts at the time of the affair, these may be shown.... [Y]ou are permitted to infer, if you find it reasonable and logical under all the circumstances, that such [false statements] were borne of a guilty mind. Such conduct is circumstantial evidence of a guilty consciousness.

Petitioner does not take issue with this portion of the charge. Rather, he claims that the trial court's subsequent discussion of the right to testify implicated the presumption of innocence. The disputed portion of the charge is as follows:

When [petitioner] elects to testify on his own behalf he assumes the risk that the jury cannot only disbelieve his story but also might wonder, quite properly, why his explanation of his conduct was so improbable, if that is your judgment.

The presumption of innocence is an essential component of the jury charge. *United States v. Oshatz*, 912 F.2d 534, 545 (2d Cir.1990), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). The thrust of the presumption of innocence is to impress upon the members of the jury that their duty is to judge the accused on the basis of evidence adduced at trial. "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

A proper instruction on consciousness of guilt does not offend the presumption of innocence. Indeed, it is well-established that a jury may infer consciousness of guilt from an accused's false exculpatory statements. *United States v. Quiroz,* 13 F.3d 505, 510 (2d Cir.1993), *reh'g granted on other grounds,* 22 F.3d 489 (2d Cir.1994); *United States v. Nusraty,* 867 F.2d 759, 765 (2d Cir.1989); *State v. Crosby,* 34 Conn.App. 261, 275, 641 A.2d 406 (1994).[2] Consciousness of guilt is derived from the falsehood of the statement, the idea being that one who is innocent need not hide the truth. Because consciousness of guilt is rooted in the evidence adduced at trial, a court's explanation of the doctrine to the jury does not undermine the presumption of innocence.

In the present case, a threshold issue is whether the contested portion of the instructions can be construed fairly as an extension of the trial court's preceding discussion of consciousness of guilt. If so, the instructions could not have undermined the presumption of innocence.

A fair reading of the jury charge reveals that it merely weaved the doctrine of consciousness of guilt with petitioner's right to testify in his own defense. Having first explained consciousness of guilt, the trial court instructed the jury on petitioner's right to testify. The trial court explained that if the jury found petitioner's testimony to be false, it could consider *why he chose to lie.* Clearly, the motive underlying petitioner's decision to lie related to whether petitioner was concealing his involvement in the crimes, i.e., whether petitioner had a consciousness of guilt.

Petitioner has isolated a portion of the charge and removed it from its context in the instructions as a whole. It is true that the challenged excerpt does not expressly use the term consciousness of guilt. It does however draw meaning and clarity from the trial court's earlier explanation of the doctrine. *See Sams,* 18 F.3d at 171. By failing to address the trial court's prior discussion of consciousness of guilt, petitioner reads the instructions in isolation and thereby misconstrues the true meaning of the charge.

The Court concludes that the disputed portion of the charge represents an extension of the trial court's earlier discussion of consciousness of guilt. Because consciousness of guilt is predicated on inferences drawn from the evidence, the trial court's instructions did not undermine the presumption of innocence.

## B. *The Burden of Proof*

Petitioner also claims that the trial court's instructions reduced the prosecution's burden of proof. Petitioner relies on the following portion of the charge in support of his argument:

Now in this particular case the accused took the witness stand and he has a perfect right to do so. Although the state clearly has the burden of proof to establish guilt beyond a reasonable doubt and although [petitioner] clearly has the right to elect not to testify if he does testify a jury may properly base its finding of guilt in part on [petitioner's] testimony and their disbelief in its truth.

When [petitioner] elects to testify on his own behalf he assumes the risk that the jury cannot only disbelieve his story but also might wonder, quite properly, why his explanation of his conduct was so improbable, if that is your judgment.

In petitioner's view, this portion of the charge allowed the jury to conclude from its disbelief of petitioner's testimony that the opposite of his false testimony represented the truth. Under petitioner's reading of the charge, the jury could disbelieve his testimony regarding his alibi and *on that basis alone,* conclude that petitioner was in fact in the apartment with the victim at the time the crimes were committed. Petitioner's selective reading of the jury charge does not withstand analysis.

The instructions did not invite the jury to adopt the opposite of petitioner's false testi-

---

**2.** The court notes that the Second Circuit has held that false exculpatory statements are *insufficient* proof on which to convict where other evidence of guilt is weak. *United States v. John-* *son,* 513 F.2d 819, 824 (2d Cir.1975). Petitioner does not claim that the prosecution's other evidence is weak.

mony. The court permitted the jury to base its finding of guilt, in part, on the dishonesty of petitioner. In other words, the court permitted an inference of consciousness of guilt based on false testimony. The court maintains its view that the challenged portion of the instructions merely linked petitioner's right to testify with the doctrine of consciousness of guilt.

The Appellate Court interpreted the jury charge differently. It rejected the argument that the disputed portion of the charge concerned consciousness of guilt. Instead, the Appellate Court held that the challenged portion of the jury charge impermissibly reduced the prosecution's burden of proof. The Appellate Court read the charge as permitting the jury "to conclude that, if it disbelieved [petitioner's] testimony, the contrary of the testimony was true." *Coleman,* 14 Conn.App. at 674, 544 A.2d 194.[3] The Court disagrees with the Appellate Court's interpretation of the charge.

The Appellate Court reads too much into the disputed portion of the jury charge. The charge is devoid of express language permitting the jury to adopt, without an evidentiary basis, the opposite of any false testimony given by petitioner. The contested portion of the charge merely asked the jury to consider *why* petitioner would testify falsely. After a careful review of the disputed portion of the charge, the Court cannot discern any basis on which to conclude that the jury, upon disbelief of petitioner's testimony, was free to consider anything beyond the fact that petitioner lied and that such dishonesty may indicate consciousness of guilt.

## C. *Petitioner's Right to Testify in His Own Defense*

 Petitioner also contends that the instructions undermined his right to testify. He claims that had he known the trial court would permit the jury to assume the opposite of any discredited testimony, he would not have testified in his own defense. As noted, the Court rejects petitioner's reading of the jury charge. The charge did not permit the

jury to assume the opposite of the petitioner's testimony absent an evidentiary basis. It follows that the jury charge did not interfere with petitioner's tactical decision to testify in his own defense.

## V.  CONCLUSION

For the reasons stated herein, petitioner's motion for summary judgment [# 16] is DENIED and respondent's motion for summary judgment [# 23] is GRANTED. The Clerk is directed to close the file.

---

**3.** As noted, the Appellate Court invoked the harmless error doctrine and affirmed the judg-

ment of conviction.